**Gilbert Kent ECK, Plaintiff-Appellant,**

v.

**E. I. DU PONT DE NEMOURS & COM-PANY, a Delaware Corporation, Defendant-Appellee.**

**No. 16274.**

United States Court of Appeals Seventh Circuit.

April 10, 1968.

Rehearing Denied May 15, 1968, en banc.

William R. McCain, George A. Hopkins, McCain & Hopkins, Kokomo, Ind., for plaintiff-appellant.

Christopher Kirages, Indianapolis, Ind., Christopher Kirages, Dutton, Kappes & Overman, Indianapolis, Ind., for defendant-appellee.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Gilbert Kent Eck, plaintiff, has appealed from a summary judgment in favor of defendant, E. I. Du Pont De

Nemours & Company, a Delaware corporation. Plaintiff, a laborer for the Reith-Riley Construction Company, Inc. (hereinafter "Reith-Riley") sought to recover damages for personal injuries, sustained through the alleged tortious conduct of defendant in failing to appropriately warn plaintiff as to the inherent dangers in the use of dynamite by plaintiff's employer, Reith-Riley, and the minimum safety precautions required for its safe use.

Defendant's motion was to dismiss the action or, in the alternative, for summary judgment. It was supported by affidavits of defendant's distributor and its works manager, accompanied by a printed pamphlet entitled "Ditching and Field Clearing with Dynamite" (hereinafter sometimes denoted "the Field Clearing pamphlet"). Defendant also submitted an empty top half of a box used to contain its dynamite, as well as an insert normally placed in said box, entitled "Prevention of Accidents in the Use of Explosives" (hereinafter sometimes denoted "insert").

Plaintiff submitted interrogatories and answers of defendant thereto, an affidavit of plaintiff's foreman, David Plugh, as well as depositions of J. R. Haines, defendant's distributor, and Lynn Parsons, the retailer who sold said dynamite to plaintiff's employer. Included in defendant's answer to interrogatory 23, relative to how far is a safe distance as prescribed in defendant's insert, is a reference to pages 36–39 of its published pamphlet "Ditching and Field Clearing with Dynamite". This reference relates "safe distance" to the size of the dynamite charge used, the nature of the soil and the tree stump to be cleared, and to " * * * the duty of one in charge to make certain that all persons are at a safe distance or under sufficient cover." It is stated that this pamphlet "is available without charge to *customers* purchasing Du Pont dynamite". (Emphasis supplied.) Page 39 of that pamphlet suggests that as a precaution in field clearing "make sure

that all persons * * * are beyond the range of flying fragments". The affidavit by David Plugh states that he "was not aware of the existence of any 'Ditching and Field Clearing with Dynamite' manual," or that a "minimum 'safe distance' from the blast was listed as 500′ to the windward side in field clearing procedures."

The court below on the basis of the record found there was no genuine issue as to any material fact, that plaintiff had no claim and that defendant was entitled to summary judgment as a matter of law.

From the findings of fact it appears that the defendant manufactured, packaged and sold through its independent distributor, J. R. Haines, Inc., to the Lizton Lumber Company, in Lizton, Indiana, a sealed carton containing dynamite. The sealed carton had enclosed inside a four-page insert which set forth an extensive list of "do" and "don't" instructions for the proper use of high explosives and dynamite, calling to the user's attention the availability of additional information. The Lizton Lumber Company subsequently sold this carton of dynamite to the plaintiff's employer, Reith-Riley. Plaintiff in the scope of his employment as a laborer for that firm, on the day in question, was assisting David Plugh, its blasting foreman in the setting and detonating of dynamite charges. The dynamite contained in the carton was removed and a charge was set and detonated by the foreman. An unknown flying object thrown by the force of this explosion struck plaintiff. It was the explosion of dynamite by Reith-Riley at a time when plaintiff was dangerously close, according to the test prescribed by defendant's publication, "the Field Clearing pamphlet" which injured plaintiff and precipitated this law suit against defendant.

Plaintiff contends that, under applicable law as applied to the facts in this case, defendant completely failed to demonstrate that it made known the dangers

inherent in the handling of dynamite of which it was fully aware. In support of that contention the "Restatement of Torts", § 388 is cited, viz.

*"Chattel Known to be Dangerous for Intended Use.*

One who supplies * * * [Du Pont] * * * through a third person [J. R. Haines, Inc. and Lizton Lumber Company, Inc.] a chattel [dynamite] for another [Reith-Riley] to use is subject to liability to those whom the supplier should expect to * * * be endangered by its probable use [plaintiff] for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and,

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Plaintiff points out that the factual situation revealed by this record clearly shows that defendant was aware of its responsibility in the distribution of high explosives in the use of which various persons, including workmen, would be exposed to injury if proper knowledgeable safeguards were not scrupulously observed. In fact it took a step toward meeting this responsibility by enclosing, in its cartons of dynamite, instructions for its safe use. It also prepared the "Field Clearing pamphlet" which specifically provides for the blaster to stand at least 500 feet from the nearest portion of the shot, when firing the blast. While this language in the pamphlet might serve to inform anyone who knew of its contents of the danger of remaining closer than 500 feet to the blast at the time it occurred, obviously the pamphlet would be no protection to one who knew nothing of its contents. Nevertheless, defendant aruges that the danger from flying fragments was known by the blasting foreman, David Plugh, because " * * * it [is] impossible to find that this blasting foreman could reasonably not have known of the danger of flying fragments."

There is no contention in this case (and on the evidence in the record there could be no such contention) that plaintiff knew the contents of the "Field Clearing pamphlet" or had been informed by anyone of its contents. The failure of plaintiff to have knowledge of this pamphlet or its contents is factually explained by the testimony of J. R. Haines, the Du Pont distributor at Bloomington, Indiana. He admitted in his deposition that he had received no special training from Du Pont with respect to handling explosives; that he did not know of any training programs available through any sources with respect to their use; that to be a distributor for Du Pont one had to be aggressive, but that he had not known of any requirements with respect to the use of dynamite that a distributor must have; that the said pamphlet was available to his customers, if they wanted it and requested it. He added that the "Do's and Don'ts" in each box of explosives go to anybody who bought it.

Lynn Parson, manager of Lizton Lumber Company, stated in his deposition that he was furnished the "Field Clearing pamphlet" by Mr. Haines for anybody that wanted information, but that it was not kept on display and that a customer would have to request it. This pamphlet was available on the date in question although Parson does not recall that the person who picked up the dynamite received the pamphlet or whether he even requested it.

1. The question upon appeal is whether the district court erred in sustaining defendant's motion to dismiss the action for failure to state a claim or in the

alternative for summary judgment. In Lawes Co. v. Detex Watchclock Corp., 300 F.2d 393 (7 Cir., 1962) we held summary judgment is appropriate in cases where the facts relevant to a meritorious defense are not in dispute and the remaining question is one of law.

Here, defendant Du Pont is engaged in the business of making and selling dynamite, an admittedly dangerous explosive, to persons who by their proximity are exposed to dynamite blasting and the propulsion through the air of the material thereby erupted. To warn persons of its dangers, defendant enclosed printed instructions in each carton of dynamite and, in addition, it prepared a printed pamphlet which recommended that, in clearing land of stumps of trees, persons should remain "at least 500 feet to the windward of the blast" until the explosion had occurred. Actually, the soundness of this latter advice is not in question. Rather, it is asserted that plaintiff, who was injured by such a blast, was standing within 500 feet, because he never saw the pamphlet and was never told of the recommendation. This assertion is not denied by defendant, who explains that actually the information contained in the pamphlet depended upon the particular use of the dynamite, and that Du Pont brought to the user's attention the fact that persons should be "at a safe distance or under sufficient cover" before a blast is fired. Defendant asserts that by means of said information for the user inserted in the enclosures with the packaging of the explosives, it had adequately or appropriately discharged its duty to plaintiff.

We have been cited to no precise statement by the Indiana courts with respect to the duty of a manufacturer of explosives to warn a user of its specific use. However, Indiana is a common law state, and an adequate statement of the duty of care of a manufacturer is found in the case of J. I. Case Co. v. Sandefur, 245 Ind. 213, 197 N.E.2d 519 (1964). There plaintiff sustained injuries to his foot when, while standing on a combine, he stepped onto the wooden cover on top of the auger, which gave away, so that his foot became entangled in the auger. The Indiana Supreme Court, in affirming judgment against the defendant, stated, at page 522:

" * * * 'one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.' * * * "

This principle of "foreseeability" had been applied by this court in Elliott v. General Motors Corp., 296 F.2d 125 (7 Cir., 1961), cert. den. 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962).

Accordingly, we hold here there were in dispute the facts relevant to the defense of Du Pont to plaintiff's sufficiently stated cause of action against Du Pont for negligence, and it was therefore contrary to Sandefur for the district court to grant the motion of defendant finding that there was no issue of fact for the jury.

2. Furthermore, it being undisputed in the instant case that Du Pont was aware of the danger of flying fragments in the use of its dynamite to clear tree stumps from open fields, it now argues that it discharged its duty to the plaintiff by enclosing in each carton of its dynamite a warning to the user to make sure that all persons are at a safe distance or under sufficient cover. It points out that the language of the "Field Clearing pamphlet" is almost identical to the language of the instructions enclosed with each carton of dynamite, and that the "Field Clearing pamphlet" only adds an explanation of the reason a manufacturer cannot say what is a safe distance. This argument, however, overlooks the basic point upon which plaintiff relies, namely, that the minimum safe distance is listed in the "Field Clearing pamphlet" and that even plaintiff's foreman was unaware that

the minimum safe distance was listed as 500 feet to the windward side in the field clearing procedures. In view of these circumstances, we cannot say (as defendant's counsel does) that " * * * it [is] impossible to find that this blasting foreman could reasonably not have known of the danger of flying fragments." Clearly Du Pont's defense rests in part upon whether the minimum safe distance outlined in its "Field Clearing pamphlet" was made known to plaintiff's foreman, and through him its duty to plaintiff was discharged. We hold that the question of whether the failure of defendant to establish that such notice was given to plaintiff either personally or vicariously, raised an issue of fact which the court should have submitted to the jury. Garatoni v. Teegarden, 129 Ind.App. 500, 154 N.E.2d 379 (1958); Toledo, St. L. & K. C. R. Co. v. Tapp, 6 Ind.App. 304, 33 N.E. 462 (1893); Peru Heating Co. v. Lenhart, 48 Ind.App. 319, 95 N.E. 680 (1911). See Indiana National Bank, Administrator v. De Laval Separator Co., 7 Cir., January 29, 1968, 389 F.2d 674.

3. Defendant's repeated reliance on McKay v. Upson-Walton Co., 317 F.2d 826 (7 Cir., 1963) is misplaced. There the working load capacity of a tackle block and hook was contained in a catalogue. The number of the catalogue was stamped upon the tackle block and hook. Plaintiff, working for his employer near this tackle block and hook, was killed when defendant's warning of its working load capacity was exceeded, causing a pipe to fall and strike plaintiff. The case went to the jury, but it was unable to reach a decision and the court granted defendant's motion for judgment. We held that the warning was available in the sense that it could be obtained from the catalogue number stamped upon the defendant's product. We said that the manufacturer was under no duty to affix additional notice of the work load capacity on the device itself. In the case at bar, however, no warning of the danger of flying fragments and the minimum safe distance in field clearing was actually made available to or communicated to plaintiff.

At this point we note in passing the comment of the "Restatement of Torts" § 388:

" * * * n. *Warnings given to third persons*

* * * Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. * * * The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it. * * * Even though the supplier has no practicable opportunity to give this information directly and in person to those who are to use the chattel or share in its use, it is not unreasonable to require him to make good any harm which is caused by his using so unreliable a method of giving the information which is obviously necessary to make the chattel safe for those who use it and those in the vicinity of its use. * * * Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character. * * * "

Restatement of the Law, Torts, 2d A.L.I., § 388, Comment (n). pp. 307, 308–309.

Accordingly, we hold the district court erred in granting defendant's motion. Its judgment is reversed and the case is remanded for a new trial, in accordance with the views herein expressed.

Reversed and remanded with directions.